USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1754

 PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, ET AL.,

 Plaintiffs,

 CONNECTICUT VALLEY ELECTRIC COMPANY and
 CENTRAL VERMONT PUBLIC SERVICE CORPORATION,

 Intervenors, Appellees,

 v.

 DOUGLAS L. PATCH, CHAIRMAN OF THE STATE OF NEW HAMPSHIRE
 PUBLIC UTILITIES COMMISSION, ET AL.,

 Defendants, Appellants.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Ronald R. Lagueux, U.S. District Judge]
 

 Before

 Selya, Circuit Judge,

 Bownes, Senior Circuit Judge,

 and Boudin, Circuit Judge.
 
 
 
 Michael E. Tucci, with whom Steven K. White, Morrison & Hecker
L.L.P. and Gary Epler, General Counsel, New Hampshire Public
Utilities Commission, were on brief for defendants, appellants
Douglas L. Patch, Susan S. Geiger and Nancy Brockway, Chairman and
Commissioners of the State of New Hampshire Public Utilities
Commission. Lee A. Freeman, Jr. with whom John F. Kinney, James T.
Malysiak, Glynna W. Freeman, Freeman, Freeman & Salzman, P.C.,
Joseph M. Kraus, Senior Vice President and General Counsel, Central
Vermont Public Service Corporation, Dom S. D'Ambruoso, John T.
Alexander and Ransmeier & Spellman were on brief for intervenors,
appellees Connecticut Valley Electric Company and Central Vermont
Public Service Corporation. 

January 24, 2000

 BOUDIN, Circuit Judge. This appeal is a sequel to prior
litigation growing out of the same district court proceeding. 
Once again, the issues relate to interim matters; the merits have
not yet been decided in the district court. To avoid repetition,
familiarity with our prior decisions is assumed; and we confine
ourselves to a bare-bones summary limited to events necessary for
this appeal.
 In 1997, acting under recently enacted state legislation,
the New Hampshire Public Utilities Commission ("the Commission")
issued a plan and implementing orders to restructure electric power
regulation in the state. The new regime, aimed at promoting
competition through various means including market-based rates,
created a risk that existing utilities might not be able to recover
their full investment in previously built facilities. The largest
utility in the state, Public Service Company of New Hampshire
("PSNH"), obtained a preliminary injunction in the district court
based, inter alia, on a colorable claim that the state's action
violated a specific agreement with that company and so also
violated bankruptcy court orders and the Contract Clause of the
U.S. Constitution. See Patch IV, 167 F.3d at 21, 26, 28.
 In our principal decision issued in 1998--Patch IV--we
upheld this preliminary injunction and, with somewhat greater
reluctance, its extension by the district court to other New
Hampshire utilities that had intervened, including Connecticut
Valley Electric Company ("Connecticut Valley"). Id. at 27-29. 
However, in the same proceeding, the district court had also
ordered the Commission to allow a specific rate increase sought by
Connecticut Valley to recover increased power costs which the
Commission had previously disallowed in December 1997, see Patch V,
167 F.3d at 32-33; in our companion decision--Patch V--we vacated
the district court's injunction in this respect, holding that
Connecticut Valley had not shown a likelihood of prevailing in
federal court on this aspect of the case. Id. at 36.
 Following our decisions, the Commission and PSNH engaged
in negotiations and have been moving toward a possible settlement
of their differences. While proceedings in the district court as
to a permanent injunction for PSNH have been deferred pending
approval of the settlement, litigation between the Commission and
Connecticut Valley has moved forward; several months ago both sides
argued cross-motions for summary judgment on the merits of
permanent relief. During this same period, two new and quite
distinct disputes have arisen--one relating to the preliminary
injunction upheld in Patch IV and the other to the further interim
relief that we disallowed in Patch V.
 The first of these two disputes stems from a new motion
filed by the Commission after Patch IV asking the district court to
vacate its earlier injunction barring the New Hampshire
restructuring plan. That injunction had rested primarily, as
preliminary injunctions normally do, see Ross-Simons of Warwick,
Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996), on a
showing of likelihood of success on the merits coupled with a
showing of threatened irreparable injury. The irreparable injury
showing, initially made by PSNH, rested in part on an accounting
convention regarding the financial treatment of so-called
regulatory assets; according to PSNH's affidavits, the proposed New
Hampshire restructuring plan would have triggered changes in the
company's financial statements, placing it in immediate default on
huge bank loans.
 Our decision in Patch IV affirming the preliminary
injunction against the restructuring plan was rendered on December
3, 1998. On January 18, 1999, the Commission moved to vacate the
injunction, primarily on the ground that changes in accounting
treatment by the Financial Account Standards Board had eliminated
the threat relied upon by PSNH in its original showing of
irreparable injury. Connecticut Valley vigorously opposed the
motion. The district court's decision on this motion is the first
issue on this appeal.
 The second dispute arises in the wake of our decision in
Patch V vacating a different aspect of the district court's
pendente lite relief. As noted above and explained in detail in
Patch V, even before its restructuring plan was scheduled to be
implemented, the Commission had disallowed an attempt by
Connecticut Valley in December 1997 to implement a specific rate
increase designed to pass along to its customers a routine increase
in the cost of power it purchases from its parent and wholesale
supplier, Central Vermont Public Service Company ("Central
Vermont"). The Commission took the view that while the increase in
Connecticut Valley's costs was real, purchasing from Central
Vermont was no longer prudent because power could currently be
bought for less on the open market. 167 F.3d at 32. Connecticut
Valley had a long-term requirements contract with Central Vermont,
but the Commission deemed it to be terminable on short notice.
 Without sharply distinguishing between this specific
disallowance by the Commission and its far-reaching restructuring
plan, the district court in April 1998 directed the Commission to
allow the increase. It was this further preliminary relief that we
found not to be justified because (in our view) Connecticut Valley
had failed to show that it was likely to prevail on the merits in
its ultimate challenge to this disallowance in federal court. Our
Patch V decision vacated this aspect of the district court's
preliminary injunction, thereby permitting the Commission to roll
back Connecticut Valley's retail rates to the pre-1998 level, see
167 F.3d at 36.
 The Commission not only rolled back the rate increase but
also ordered further temporary reductions by Connecticut Valley,
below the level prevailing in December 1997, in order to flow back
to customers the amount of the increases that had been collected
between the time of the district court's injunction with respect to
the disallowance and the later vacation of that injunction in Patch
V. Connecticut Valley then asked the district court to enjoin the
Commission from requiring this further reduction until the district
court decided the merits of Connecticut Valley's request for a
permanent injunction requiring the Commission to allow the company
to charge rates sufficient to cover all of its costs. The
Commission opposed the request.
 On April 7, 1999, after a hearing, the district court
entered an order refusing to dissolve the preliminary injunction
upheld in Patch IV and granting in substance the additional relief
sought by Connecticut Valley to defer any flow-back of the increase
that the company had collected before this court vacated the
district court's April 1998 injunction in that respect in Patch V. 
The district court did not discuss at length its reasons for the
first of these actions; but it wrote several paragraphs of findings
and explanations with respect to the second. The Commission now
appeals, challenging both aspects of the district court's order.
 On this appeal, little need be said about the district
court's refusal to modify the preliminary injunction enjoining the 
the Commission's restructuring plan. PSNH's original showing of
irreparable injury did depend in part on the issue of the then-
current accounting treatment of so-called regulatory assets; but
the threatened accounting treatment merely accelerated and made
more dramatic the adverse consequences of the plan for PSNH. It
was credibly alleged, at least sufficiently for preliminary relief,
that the restructuring plan, as framed at the time, would prevent
PSNH from ever recovering very substantial prior investments
assertedly protected by a specific contract with the state and by
implementing orders of the bankruptcy court.
 When in early 1998 Connecticut Valley joined PSNH in
seeking interim relief, it provided arguments and affidavits of its
own to demonstrate the harm that the restructuring plan would do to
it. Once again, the projected accounting treatment of regulatory
assets was one of several strands in the showing of harm to
Connecticut Valley. But, as is shown by even a brief review of the
company's motion papers, it was certainly not the only one--nor was
the greatest dollar impact on the company attributed to this
accounting requirement.
 As we pointed out in Patch IV, 167 F.3d at 23, 28, the
Commission made little effort to challenge the showing of
irreparable injury by either PSNH or Connecticut Valley. Only the
most significant change in circumstances would require the district
court to revisit that issue. Yet the change in accounting
treatment now trumpeted by the Commission was apparently made in
July 1997, over a year before our decision in Patch IV upholding
the same injunction. If the Commission thought that this
adjustment changed everything, it certainly should have stressed
this in its original appeal in Patch IV, or asked for a remand to
consider the effect of the change. In any event, the district
court did not abuse its discretion in refusing to modify the
preliminary injunction based on the accounting change.
 The district court's new prohibition of the Commission's
further reduction in Connecticut Valley's rates is an entirely
different matter. In part, the company's defense of this new
relief rests on a narrow ground, namely, on case law that the
company argues allows a court to defer claims of restitution
stemming from a vacated preliminary injunction until the merits
have been decided. However, Connecticut Valley's defense also
involves a view of our prior decisions in Patch IV and V that is
not consistent with those decisions and may have implications for
any further interim disputes and possibly for the merits of this
case. For this reason, we revisit briefly the scope and rationale
of our earlier decisions.
 Ordinarily, a district judge has a great deal of freedom
to impose interim relief and, in particular, to preserve the status
quo in all matters properly before it. But efforts by utilities to
enjoin state rate orders are not ordinary cases and relief--interim
or permanent--is severely restricted, especially by the so-called
Burford abstention doctrine, Burford v. Sun Oil Co., 319 U.S. 315
(1943), and by the Johnson Act, 28 U.S.C. 1342 (1994). Broadly
speaking, the staples of utility-company appeals--attacks under
state law or based on due process--are severely limited when made
in federal courts. See Patch IV, 167 F.3d at 24-25. PSNH barely
threaded its way through this maze of limitations in obtaining a
preliminary injunction against the restructuring plan--relief
extended to the other utilities partly based on defaults by the
Commission. Id. at 28.
 However, thus far in the district court neither PSNH nor
any other company has justified relief--consistent with Burford and
the Johnson Act--against any rate orders of the Commission except
its attempts to implement the restructuring plan. The orders of
the Commission refusing to allow Connecticut Valley to recover the
cost increases imposed by Central Vermont are not orders
implementing that plan, which is why in Patch V we vacated the
further relief granted by the district court. This is equally true
of the Commission's latest order lowering rates temporarily below
the December 1997 rate to refund the amounts collected under the
vacated Patch V injunction.
 In its brief and at oral argument, Connecticut Valley
made clear that it thinks that the district court has assured the
company pendente lite of its right to collect "its costs," a goal
frustrated in part by this court's supposed failure to understand
that cost recovery is the status quo that the district court has
sought to preserve. However, what Patch IV and V sought to make
clear is that no such assurance is valid; the district court's
injunctive relief was sustained only against orders implementing
the restructuring plan. If injunctive relief is to extend beyond
such orders, it must be independently justified. True, the
restructuring plan and the disallowance and refund orders against
Connecticut Valley both may undermine cost recovery; but the former
has been validly enjoined pendente lite and the latter has not.
 This leaves open the possibility that the district
court's latest action deferring any refund can be justified on a
narrower set of grounds. The decisions relied on by Connecticut
Valley, see note 2 above, reflect a common-sense policy that allows
a district court to wait until the end of a case to undo any
mischief wrought by interim relief it granted in error. This often
makes sense because the final outcome may affect the amount of any
restitution or damage relief, or show that nothing at all should be
repaid, even though the preliminary relief was wrongly granted in
the first place.
 But here the district court is not deferring a
restitution order of its own; it is enjoining the Commission from
ordering restitution on the Commission's own authority. Agencies
like the Commission often require refunds of rates "wrongly"
collected. Unless the original Commission order disallowing the
Connecticut Valley increase is vulnerable to injunction by a
federal court, it is hard to see what authority a federal court has
to defer the Commission-ordered refund. And, as we explained in
Patch V, 167 F.3d at 35-36, Connecticut Valley has not yet made
such a showing of likely vulnerability as to the disallowance
order.
 This is not because the Commission's disallowance order
is sound. At best, the state agency may be exploiting a possible
drafting mistake--the short-notice termination clause in the
original contract between the two utilities--to shift to Central
Vermont (or to Vermont ratepayers) what may well have been
Connecticut Valley's prudently incurred costs of achieving long-
term rate protection for its New Hampshire customers. See Patch V,
167 F.3d at 36. If so, there may be a remedy available to
Connecticut Valley in state court and, in any event, if Central
Vermont prevails at the Federal Energy Regulatory Commission
("FERC") and is allowed to impose a termination charge on
Connecticut Valley, the Commission may be forced to retreat from
its effort to compel the contract termination, thereby undermining
its rationale for its disallowance order. 
 Nevertheless, given the limitations imposed by Burford
and the Johnson Act, it remains unclear why Connecticut Valley
thinks that it can overturn the disallowance order in federal
court. Its own Contract Clause argument is quite different from
that of PSNH, which implicated a specific bankruptcy settlement
formally approved by the state; and, lacking a connection to
federal bankruptcy orders, Connecticut Valley's Contract Clause
claim may, even if otherwise sound, face some difficulty in federal
court given the broad language of the Johnson Act. See Patch IV,
167 F.3d at 24-25. Nor has the company yet been able to explain
plausibly, at least to us, how the disallowance order conflicts
with a federal statute or FERC order--claims admittedly likely to
avoid the Johnson Act's bar. See Patch V, 167 F.3d at 33-34.
 On this record, we are no more able to sustain the
injunction against the Commission's new refund order than we were
to sustain the earlier injunction against the underlying
disallowance that we vacated in Patch V. But the district court
may be on the verge of supplying the missing explanation in
deciding the merits of the now-submitted cross-motions for summary
judgment. Based on its orders respecting the disallowance and the
refund, the district court seemingly believes that both measures
are vulnerable to a federal injunction, despite the Johnson Act,
and it may be on the verge of making clear why.
 It is thus possible that in the near future the district
court will grant permanent injunctive relief requiring the
Commission to allow cost pass-throughs of Central Vermont cost
increases; and if so it would be very odd to have refunds,
inconsistent with such an injunction, made effective in the next
several months. For this reason, we have determined not to vacate
the district court's injunction against the refund order ourselves
but instead to remand this aspect of the case to the district court
for further proceedings consistent with this opinion. Cf. SEC v.
Lehman Bros., Inc., 157 F.3d 2, 9 (1st Cir. 1998).
 On remand, the district court may defer vacation of this
injunction against the refund order for up to 90 days. If within
that period it has decided the merits of the request for a
permanent injunction in a way inconsistent with refunds, or has
taken any other action that provides a showing that the company is
likely to prevail on the merits in federal court in barring the
refunds, it may enter a superceding injunction against the refund
order, which the Commission may then appeal to us. Otherwise, no
later than the end of the 90-day period, the district court must
vacate its present injunction insofar as it enjoins the
Commission's refund order.
 The district court's refusal to modify the injunction
insofar as it prohibits implementation of the restructuring plan is
affirmed; insofar as the district court has enjoined the
Commission's refund order, the matter is remanded for further
proceedings consistent with this opinion. 
 It is so ordered.